UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES STEVENSON, III

                    Plaintiff,                    Case No. 06-CV-15182

v.                                                Paul D. Borman
                                                   United States District Judge
MEGAN J. BRENNAN,
POSTMASTER GENERAL OF                David R. Grand
THE UNITED STATES                        United States Magistrate Judge

                    Defendant.
_____/

## OPINION AND ORDER REGARDING PLAINTIFF'S EVIDENTIARY OBJECTIONS

In this Title VII case, Plaintiff James Stevenson alleges that his employer, the United States Postal Service,[1] took various adverse employment actions against him for discriminatory and retaliatory reasons over the course of several years. Now before the Court are two sets of objections made by Plaintiff to two different exhibits attached to Defendant's Reply in support of its partial summary judgment motion. For the reasons stated below, the Court will sustain two of Plaintiff's objections (and therefore disregard the evidence at which they are directed), and overrule the remaining objections.

### I.      PROCEDURAL BACKGROUND

Defendant filed a Motion for Partial Summary Judgment on September 3, 2015. (ECF No. 68, Def.'s Mot.) Plaintiff filed his Response on October 27, 2015 (ECF No. 77, Pl.'s Resp.). The parties agreed to extend Defendant's time to file its Reply (ECF No. 79), and Defendant timely filed the Reply (ECF No. 81, Def.'s Repl.). Among the four Exhibits to Defendant's Reply

---

[1] Nominally, the Defendant in this action is Megan J. Brennan, in her capacity as Postmaster General of the United States. For practical purposes, however, the United States Postal Service was Plaintiff's employer, and so references to "Defendant" in this opinion are made with that fact in mind.

were two sworn Declarations to which Plaintiff's evidentiary objections are directed. (ECF No. 81, Ex. 34, Declaration of Nicole Collins-Early; ECF No. 81, Ex. 36, Declaration of Michael Greene.)

The Collins-Earley Declaration contains nine paragraphs. In it, Collins-Earley, who identifies herself as the "Great Lakes Area Complement Coordinator," avers that owing to declining mail volume in the Great Lakes area between 2005 and 2012, a total of 16,503 full-time and part-time workers were "identified for excessing" in that area during that time. (Collins-Earley Decl. ¶ 3.) The Collins-Earley Declaration goes on to describe the process by which Plaintiff's position was identified for excessing based on a report generated from local data, and then to state that Plaintiff was not excessed, in the end, because a different employee was awarded a bid in a different section and for a different job classification. (*See id.* at ¶¶ 4-9.)

The Greene Declaration contains seven paragraphs. In it, Greene, who avers that he is a "Human Resources Specialist," identifies five employees of Defendant in the Metro Detroit area who were issued removals for scheme failure, but who for unrelated reasons were permitted to continue their employment in their original positions or in others. (*See* Greene Decl. ¶¶ 3-7.)

Plaintiff filed a Statement of Objections as to each of these Declarations on February 23, 2016. (ECF Nos. 85, 86.) On February 29, 2016, the Court entered an Order requiring Defendant to respond "fully and separately" to each objection (ECF No. 87), and Defendant complied on March 11, 2016 (ECF No. 88.).

Plaintiff filed a lengthy Reply to Defendant's Response in Opposition to Plaintiff's objections on March 24, 2016. (ECF No. 89.) Defendant moved to strike the Reply on the basis that the Reply was neither ordered by the Court nor permitted by court rule, and that Motion to Strike saw its own full round of briefing. (ECF Nos. 90-93.) On December 1, 2016, the Court

granted the Motion to Strike. (ECF No. 98.)

Having determined that there is no need for oral argument, the Court will now rule on Plaintiff's objections based on the parties' written submissions. *See* E.D. Mich. LR 7.1(f).

## II.     STANDARD OF REVIEW

As a threshold issue, Plaintiff's styling of his submission regarding the Collins-Earley Declaration as a Motion to Strike[2] is procedurally improper. The Sixth Circuit has held that Motions to Strike are only proper as a means to strike pleadings, which as defined in the Federal Rules of Civil Procedure, do not include motions or exhibits attached to motions. *See* Fed. R. Civ. P. 7(a); *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir.2006) ("Exhibits attached to a dispositive motion are not 'pleadings' within the meaning of [Rule] 7(a) and are therefore not subject to a motion to strike under Rule 12(f)."). Instead, "[t]he preferred method to challenge exhibits is by filing a notice of objection." *Cross v. Sbarro Am., Inc.*, 2011 WL 572415, at *3 (E.D. Tenn. 2011) (citing *Sutton v. U.S. Small Bus. Admin.*, 92 F. App'x 112, 118–19 (6th Cir. 2003)); *see also Gibson v. Prof'l Account Mgmt., LLC*, No. 11-CV-12920, 2012 WL 7990304, at *5 (E.D. Mich. Nov. 15, 2012) (characterizing the filing of a Rule 12(f) motion to strike an affidavit rather than a notice of objection as a "common mistake"), *report and recommendation adopted*, No. 11-CV-12920, 2013 WL 1774684 (E.D. Mich. Apr. 25, 2013).

Courts have construed Rule 12(f) motions filed in circumstances like these as objections, and then given them due consideration in evaluating the motions to which they related. *See, e.g., Cross*, 2011 WL 572415, at *3; *Kellogg Co. v. Exxon Corp.*, 1998 WL 1051061, at *11 (W.D. Tenn. 1998) ("The court will assess the admissibility of the declarations, and exhibits . . . , as

---

[2] Plaintiff styles his submission regarding the Collins-Earley Declaration as a Motion to Strike but characterizes his filing on the Greene Declaration as a set of Objections. It is unclear why Plaintiff has differentiated them in this way, but the Court will treat both filings as objections for the reasons set forth in this section.

3

necessary to rule on the merits of each of the summary judgment motions addressed in this order."), *rev'd on other grounds*, 209 F.3d 562 (6th Cir. 2000). The Court will do the same with Plaintiff's submissions as to these two Declarations.

### III.   ANALYSIS

#### A.   Timeliness of Plaintiff's Objections

As a threshold issue, Defendant argues that Plaintiff's objections are untimely, both because Plaintiff waited over three months after Defendant's Reply was filed to raise them without ever explaining why, and because that delay made it necessary to postpone the hearing on the summary judgment motion that the objections pertain to.

Neither Rule 12 nor any Sixth Circuit precedent of which the Court is aware requires that a motion to strike an affidavit, construed as an objection as the Court does here, be filed within a specific period of time.[3] Neither of the cases cited by Defendant supports the denial of an evidentiary objection or a Motion to Strike based on delay alone: in each case, delay was only one of several factors in the court's decision. In *Santander Consumer USA, Inc., v. Superior Pontiac Buick GMC, Inc.*, No. 10-13181, 2012 WL 5363553 (E.D. Mich. October 30, 2012), the court rejected a motion to strike a witness list as untimely, in part because of a filing delay, but also because the movant had had an earlier opportunity to object to the same witness list but neglected to do so. *See id.* at *2-3. And in *Alford v. Pousak*, No. 07-15517, 2009 WL 1299568 (E.D. Mich. Apr. 29, 2009), the court rejected a motion to strike affidavits primarily because it found the motion to be without merit, and only noted in dicta that the motion was filed two months after the affidavits. *See id.* at *1. Alford is also distinguishable because the motion to

---

[3] Rule 12(f)(2) provides that in general, parties should file motions to strike either "before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." But because "[e]xhibits attached to a dispositive motion are not 'pleadings'" within the meaning of the Federal Rules of Civil Procedure, *Fox*, 173 F. App'x at 375, that provision does not apply here.

4

strike was filed the day before the court was to hear the related summary judgment motion, whereas Plaintiff's objections in this case were filed more than two weeks before the hearing was originally scheduled. *See id.*

If anything, *Santander* and *Alford* together stand for the proposition that denial of a motion to strike may be appropriate where the movant effectively waived the objection by failing to raise it at an identifiable earlier opportunity, or where evaluating the motion on the merits would cause some form of prejudice to the nonmovant. Defendant has not shown that either of these circumstances exists in this case, so the Court rejects this argument and will rule on the merits of Plaintiff's objections.

**B.     Plaintiff's Objections to the Collins-Earley Declaration**

Plaintiff's objections to the Collins-Earley Declaration fall into two categories. First, Plaintiff argues that the Collins-Earley Declaration's reference to declining mail volume in the "Great Lakes Area" is outside the scope of the issues presented in Defendant's Motion and Plaintiff's Response, and that it should also be disregarded because Defendant never produced documents that pertained to aggregate excessing in that area overall. Second, Plaintiff argues that statements in the Collins-Earley Declaration regarding Plaintiff's seniority are false, as demonstrated by previously submitted record evidence. Neither set of objections justifies disregarding the Collins-Earley Declaration in whole or in part, and consequently the Court will overrule them both.

**1.     Declining Mail Volume in the "Great Lakes Area"**

The Collins-Earley Declaration avers that "[d]eclining mail volume has been a continuing issue, [and] from 2005 to 2012, the Great Lakes Area has had 2655 separate excessing events. Between 2005 and 2012, a total of 16,503, full-time regular, part-time regular, and part-time

5

flexible career workers have been identified for excessing in the Great Lakes Area." (Collins-Earley Decl. ¶ 3.)

Plaintiff objects that information about mail volume and excessing practices in the "Great Lakes Area" is outside the scope of any issues raised in Defendant's Motion for Partial Summary Judgment or Plaintiff's Response, since those briefs dealt only with actions that took place in the city of Detroit, except for a statement in Plaintiff's Response that Plaintiff was the only part-time regular ("**PTR**") employee excessed in the State of Michigan. Citing Sixth Circuit precedent to the effect that a party can't raise an issue for the first time in a reply to a response, Plaintiff urges the Court to disregard the Collins-Earley Declaration because Defendant "should not be permitted to use this Declaration to raise issues for the first time in a reply to a response." (ECF No. 85 at 4 (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).)

As Defendant aptly points out, however, that assertion in the Collins-Earley Declaration is relevant to whether Defendant had a legitimate reason for eliminating Plaintiff's position at the Brightmoor station, which is one of the adverse employment actions on which Plaintiff bases his retaliation claim. In its Motion for Partial Summary Judgment, Defendant stated that it had operational reasons for taking this action, and Plaintiff countered in his Response that Defendant "did not excess any other [similar] position in the entire State of Michigan." (Pl.'s Resp. at 23.) An attempt by Defendant to refute that claim by offering evidence that a larger regional subsection of Defendant's did in fact have operational reasons for excessing positions does not amount to raising a new issue in the Reply.

Plaintiff also argues that in discovery, Defendant only produced records that pertained to excessing in Southeast Michigan, and "did not produce, either in its Rule 26 disclosures or in its responses to Stevenson's discovery requests, any records . . . involving '2655 separate excessing

6

events' in the Great Lakes Area or any other documents involving aggregate Great Lakes Area excessing." (ECF No. 85 at 4.) Under Fed. R. Civ. P. 37(c), Plaintiff concludes, Defendant "is not allowed to use that information or witness to supply evidence on a motion."

To begin with, Plaintiff has not demonstrated a failure on Defendant's part to disclose information or a witness in a way that would bring this provision of Rule 37 into play. Defendant only introduced this information after Plaintiff argued in his Response that Defendant had not excessed similar positions to Plaintiff's in the state of Michigan, and Plaintiff has not pointed to any discovery request he made that would have required disclosure of the information. This is not a situation in which a party is relying on a document or documents that should have been produced, since in its citation to the Collins-Earley Declaration, Defendant relies on Collins-Earley's personal knowledge of regional excessing practices. And Plaintiff cannot argue that Defendant failed to disclose Collins-Earley as a witness, if only because Plaintiff himself submitted a Declaration by Collins-Earley from earlier litigation between APWU and Defendant as an exhibit to his Response. (Pl.'s Resp., Ex. 47, N. Collins-Earley Declaration (with attachments), No. 10-10316 (E.D. Mich.).)

Even if there were a failure to disclose on Defendant's part, Rule 37(c)(1) allows a party to rely on previously undisclosed evidence if "the failure [to disclose the evidence] was substantially justified or is harmless." The Sixth Circuit has adopted a five-factor test for this determination, which requires a court to consider whether

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015). The fact that Defendant employed the Collins-Earley Declaration to rebut Plaintiff's claim about statewide excessing puts the first,

7

second, and fifth of these factors in Defendant's favor, since Plaintiff can't colorably argue that he was surprised by Defendant's use of this information, and since it provides a plausible explanation as to why Defendant has not raised the specific topic of region-wide excessing until its Reply. It is also not clear that any omission by Defendant has been disruptive to the proceedings, since Plaintiff had the opportunity to object in the filings presently before the Court. The importance of the evidence is at least debatable, since it bears on one of Plaintiff's pretext arguments, but on balance, application of the five-factor test weighs in favor of a finding that even had Defendant materially failed to disclose information in discovery, the omission was both substantially justified and harmless.

The Court will therefore overrule Plaintiff's objection to Paragraph 3 of the Collins-Earley Declaration.

2.   **Plaintiff's Seniority Date**

In her Declaration, Collins-Earley avers that Plaintiff, "[i]n 2008, as the junior PTR clerk based on his seniority, was identified as excess to the needs of . . . the installation/craft." (Collins-Earley Decl. ¶ 8.) Plaintiff takes issue with this statement in two respects. First, he argues that he was not in fact the most junior PTR clerk at that time, because his seniority date was February 28, 1998, while that of Yolanda Bullard, a PTR clerk who was not excessed, was March 14 of the same year. Second, he argues that Collins-Earley could not have had personal knowledge of the sectional excessing at the Detroit city stations since she performed higher-level work involving "installation excessing." (ECF No. 85 at 6.)

The first of these arguments is undermined by Plaintiff's own evidence, which demonstrates that at the time the excessing decision was made in 2008, Defendant's records erroneously indicated that Plaintiff's seniority date was April 11, 1998 (and therefore that he was

8

more junior than Bullard), but also that Plaintiff did not have this corrected until 2013—years after the events relevant to this action took place. (*See* Pl.'s Resp., Ex. 43, USPS-APWU Meetings (October 2008) at 207, Pg ID 3182; ECF No. 85, Ex. C, USPS Records Pertaining to Stevenson's Seniority.) Plaintiff's deposition testimony indicates that two separate documents Plaintiff received from Defendant around the time of the excessing—the bid award notice that he was sent when he bid on a position at the Brightmoor station, as well as the subsequent correction notice that he received after he was removed from the bid—showed the same erroneous date, and Plaintiff did not raise the issue at that time. (Stevenson Dep. (7-13-15) 266:19-268:22.) Plaintiff also does not contest that at that time, his own union understood his seniority date to be in April rather than February. (Stevenson Dep. (7-13-15) 268:23-269:1.) In the end, there is no dispute over what Defendant's records stated Plaintiff's seniority date was at the time relevant to Plaintiff's retaliation claim, and the information that Defendant had at the time of the employment decision in question is what matters to the case. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 714 (6th Cir. 2007) (explaining that in Title VII cases, "the burden is on the employer to point to specific facts that it had at the time the decision was made which would justify its belief in the proffered reason" for the employment decision).

Plaintiff's assertion that Collins-Earley necessarily lacked personal knowledge of excessing at the Detroit city stations is unsupported and ultimately unpersuasive: Collins-Earley need not have been personally involved in whatever excessing took place at the local level in 2008 in order to have personal knowledge of the fact that Plaintiff was identified for excessing based on his seniority, and Collins-Earley also avers in the Declaration that her testimony is based on review of regularly kept business records. This would be sufficient to show Collins-Earley's competence to testify on this point even if it were shown that she did not have

independent personal knowledge. *See Daniel v. W. Asset Mgmt., Inc.*, No. 11-10034, 2011 WL 5142980, at *9 (E.D. Mich. Oct. 28, 2011) ("Personal knowledge ... is not strictly limited to activities in which the declarant has personally participated.") (quoting *Washington Cent. R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D.Wash.1993)); *Supplier's City SA De, CV v. EFTEC N. Am., LLC*, No. 07-12694, 2010 WL 538427, at *7 (E.D. Mich. Feb. 10, 2010) ("Personal knowledge can come from review of the contents of business records, and an affiant may testify to acts that he did not personally observe but which are described in business records."); *see also Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 305 (6th Cir. 2016) (explaining that when a corporation or organization speaks through a declarant, "[t]here is no obligation to select a person with personal knowledge of the events in question, so long as the corporation [proffers] a person who can answer regarding information known or reasonably available to the organization") (internal quotation marks omitted).

For the above reasons, the Court will overrule Plaintiff's objections to Paragraph 8 of the Collins-Earley Declaration.

C.  **Plaintiff's Objections to the Greene Declaration**

The Declaration of Michael Greene, attached as Exhibit 36 to Defendant's Reply in support of its Motion for Partial Summary Judgment, is relevant to the question of whether employees similarly situated to Plaintiff were removed for scheme failure, which itself relates to Plaintiff's retaliation claim regarding that employment action.

In his Response to Defendant's Motion for Partial Summary Judgment, Plaintiff stated that other clerks who failed scheme training were not removed or required "to go through arbitration hearings . . . to have their employment restored." (Pl.'s Resp. at 26.) In support of this, he cited four Exhibits, each of which contain either employment records showing scheme failure

by other employees, or emails indirectly suggesting the same. (Pl.'s Resp., Exs. 60, 63-64, 66.) Defendant attached the Greene Declaration to its Reply to show that those other employees were not in fact similarly situated to Plaintiff: Greene avers in the Declaration that the all five of the employees received Notices of Removal for scheme failure in the same way that Plaintiff did, but that each of the five subsequently passed the training, bid to a different position, or (in one case) returned to work as part of a grievance settlement. (Greene Decl. ¶¶ 3-7.)

Plaintiff raises objections to Greene's statements about each of the five employees, and they are considered in turn below.

### 1. Julie Coulter

Greene avers: "Employee Julie Coulter bid to a position at Gratiot station in 2009 that required scheme training. She was issued a removal for scheme failure but subsequently passed her scheme training on April 23, 2010." (Greene Decl. ¶ 4.)

Plaintiff objects that this element of the Greene Declaration is false, because records attached as exhibits to Plaintiff's Reply demonstrate that Coulter did not in fact pass her scheme training, but rather passed the training (and thus qualified) for a different type of position: specifically, she qualified as a small parcel and bundle sorter ("**SPBS**"), rather than as a clerk. (Pl.'s Resp., Ex. 63, Coulter Scheme Failure Records, Pg ID 3371.) In response, Defendant admits that Greene "misread the scheme training records" and thereby "mistook Coulter's qualification on the small partial [*sic*] bundle sorter . . . for her scheme training." (ECF No. 88 at 10-11.) Defendant also submits a supplemental sworn declaration in which a Labor Relations Specialist for the Detroit District Office avers that Coulter bid on and qualified for a different position effective May 8, 2010, and was thus not removed for scheme failure. (ECF No. 88, Ex. 1, Declaration of Stacey O. Parker ¶¶ 4-5.)

11

Plaintiff's objection is therefore technically correct, though the error on Defendant's part doesn't really weaken the argument that this portion of the Greene Declaration was intended to support: Coulter was not similarly situated to Plaintiff even given the correction, because unlike Coulter, Plaintiff did not bid to a different category of position in order to avoid removal. In fact, two of the other four employees identified in the Greene Declaration—Maranetta Fields and Dinetria Sams—are stated to have avoided removal by successfully bidding for other positions (Greene Decl. ¶¶ 6-7), and Defendant's correction merely puts Coulter in the same category as them.

Even so, Plaintiff's objection is accurate. The Court will sustain Plaintiff's objection as to Paragraph 4 of the Greene Declaration, and will therefore disregard that paragraph in favor of the Parker Declaration when evaluating Defendant's Motion for Partial Summary Judgment. *See Wilson v. Budco*, 762 F. Supp. 2d 1047, 1059 (E.D. Mich. 2011) ("When defective affidavits are submitted, the submission of additional affidavits is sufficient to cure any defect which may have existed in the original affidavit.") (quoting *United States v. Macomb Contracting Corp.*, No. 3–84–1095, 1988 U.S. Dist. LEXIS 17608, * 41 (M.D. Tenn. Oct. 14, 1988)).

2. **Kena Walker**

Greene avers: "Employee Kena Walker was assigned to a position at Brightmoor station in 2009 that required scheme training. She was issued a removal for scheme failure but subsequently passed her scheme training on November 13, 2009." (Greene Decl. ¶ 3.)

Plaintiff's objection to this paragraph is identical to his objection to the paragraph regarding Coulter: that on the date Greene avers Walker passed her scheme training, she actually qualified as an SPBS. Here again, Defendant admits that this was a misreading of the records on Greene's part (ECF No. 88 at 11) but does not, in this case, include a supplemental declaration

correcting the defect.

What makes Walker's situation different from Coulter's is that Plaintiff acknowledges that Walker eventually did pass scheme training for the Brightmoor station (though not on the date averred in the Greene Declaration), but also cites record evidence showing that after failing the Gratiot scheme training three times in March 2009, Walker was afforded at least five (and by Plaintiff's account, eight) opportunities to pass the Brightmoor scheme training in April and May of the same year. (*See* ECF No. 86 at 5; Pl.'s Resp., Ex. 60, Walker Scheme Failure Records, Pg ID 3370.) Defendant counters on this point by arguing first that any additional deferment that Walker received is beyond the scope of the Greene Declaration, and then by claiming that Plaintiff's pointing out the extra chances Walker had to pass the Brightmoor scheme training is an "attempt[] to address issues that could have been raised in his response in the guise of an 'objection.'" (ECF No. 88 at 11.) The first of these assertions is correct, albeit somewhat beside the point, since Defendant has admitted that the paragraph in the Greene Declaration regarding Walker is inaccurate. The second assertion is incorrect, however, as Plaintiff did in fact raise this issue in his Response, stating in a footnote that although the applicable guidelines "permit[] only two qualifying attempts during the deferment period[,] . . . [Defendant] granted Walker eight qualifying attempts during her deferment period." (*See* Pl.'s Resp. at 26 n.9.)

Plaintiff's objection to this element of the Greene Declaration is well taken. Because Defendant admits that the Declaration's statement about Walker is incorrect, and because Defendant did not include a corrective affidavit or declaration on this point as it did regarding Coulter, the Court will sustain Plaintiff's objection and will disregard Paragraph 3 of the Greene Declaration altogether.

### 3. Maranetta Fields

Greene avers: "Employee Maranetta Fields bid to a position at Northend station in 2009 that required scheme training. She was issued a removal for scheme failure but bid to another position in 2010." (Greene Decl. ¶ 5.)

Plaintiff objects that this paragraph of the Greene Declaration also misrepresents Defendant's treatment of the employee it identifies. Specifically, Plaintiff argues that although Fields did fail scheme training for the Northend station, and although she successfully bid for another position, she was allowed to continue working at the Northend station despite having failed the scheme training for that location. Plaintiff further states that Defendant later paid Fields an award of $5,000 "as a result of improperly allowing her to work at Northend Station instead of requiring her to report to her official bid assignment in Romulus." (ECF No. 86 at 6.)

Defendant's position here is simply that nothing Plaintiff has raised shows that Greene's statement regarding Fields was inaccurate: she did in fact bid to another position to avoid removal. Defendant is technically correct in that respect, so the Court will overrule Plaintiff's objection, and will not disregard Paragraph 5 of the Greene Declaration. The Court will still consider Plaintiff's argument that Fields was allowed to work despite having failed scheme training, since Plaintiff raised it before: he testified to this point in his 2015 deposition, and stated that he was actually the representative who won her the $5,000 award. (Stevenson Dep. (7-13-15) 75:18-76:22.))

### 4. Jerome Record and Dinetria Sams

Greene avers: "Jerome Record bid to a position at Oak Park in 2009 that required scheme training. He was removed for scheme failure but subsequently returned to work as part of a grievance settlement." (Greene Decl. ¶ 6.) Greene further avers: "Employee Denetria Sams bid to

14

a position at Northend station in 2009 that required scheme training. She was issued a removal for scheme failure but bid to another position." (Greene Decl. ¶ 7.)

Plaintiff levels the same objection at each of these two paragraphs: that neither individual was mentioned either in Defendant's Motion for Partial Summary Judgment or in Plaintiff's Response, and so Defendant cannot mention either of them for the first time in its Reply. This is wholly incorrect. In his Response, Plaintiff argued that other similarly situated employees were not subject to removal for scheme failure, and among the Exhibits cited by Plaintiff for this argument was a set of emails referring to these two employees. (*See* Pl.'s Resp. at 26; Pl.'s Resp., Ex. 66, Scheme Failure Records – Other Employees.) One email, sent by Plaintiff to an EEO investigator and dated October 5, 2009, states that Jerome Record failed his scheme training but was "allowed to return to work in less than 10 days, given additional on the clock study time, given back pay, allowed to return to his former position, and reinstated." (Pl.'s Resp., Ex. 66, Pg ID 3430.) Another email, dated September 21, 2009, was sent to the same EEO investigator by an employee of Defendant's named Jacinta Arnold; in it, Arnold stated that she would send records to the investigator regarding several employees, including a "Demetrius Sam." (*Id.*, Pg ID 3431.) Plaintiff cannot maintain that Defendant introduced these individuals for the first time in its Reply.

Plaintiff also argues that Defendant never produced any records regarding Record and Sams in discovery. This argument is undercut not only by the fact that Plaintiff himself raised the topic of Records and Sams in his Response (and therefore can't claim unfair surprise), but also by the fact that Defendant did in fact produce records related to the two employees. Those records, which include the email mentioned above as well as an Individual Training Progress Report for "Dinetria Sams," are attached as Exhibit 2 to Defendant's Response in Opposition to

15

Plaintiff's Objections. (ECF No. 88, Ex. 2, Bates Labeled Documents.)

Plaintiff's objections as to Paragraphs 6 and 7 of the Greene Declaration lack merit, and the Court will therefore overrule them.

## IV. CONCLUSION

For the reasons stated above, the Court will SUSTAIN Plaintiff's objections as to Paragraphs 3 and 4 of the Greene Declaration, and will therefore disregard Paragraph 3 of the Greene Declaration altogether and disregard Paragraph 4 of the Greene Declaration in favor of the Parker Declaration. The Court will also OVERRULE Plaintiff's remaining objections to the Greene Declaration, as well as all of Plaintiff's objections to the Collins-Earley Declaration.

IT IS SO ORDERED.

_____
Paul D. Borman
United States District Judge

Dated: 2-23-17

16