UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES STEVENSON,

        Plaintiff,

v.

MEGAN J. BRENNAN, Postmaster
General of the United States,

        Defendant.

_____/

Case No. 06-15182

Paul D. Borman
United States District Judge

David R. Grand
United States Magistrate Judge

# OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (ECF No. 109)

This matter comes before the Court on Plaintiff's Motion for Default Judgment as to Liability as to Retaliation Claims Involving Scheme Training and Termination Due to Spoliation of Evidence. (ECF No. 109.) In that Motion, Plaintiff argues that Defendant destroyed evidence with sufficient deliberateness and culpability as to warrant default judgment against Defendant on certain claims as a sanction. For the reasons that follow, Plaintiff's arguments lack merit; the Court denies Plaintiff's Motion.

## I. BACKGROUND

Plaintiff filed the instant Motion for Default Judgment as to Liability as to Retaliation Claims Involving Scheme Training and Termination Due to Spoliation of Evidence on March 6, 2018. (ECF No. 109, Pl.'s Mot.) Defendant filed a

Response two days later (ECF No. 110, Def.'s Resp.), and Plaintiff filed a Reply on March 15, 2018 (ECF No. 115, Pl.'s Reply).

Plaintiff's Title VII retaliation claim is premised partly on the allegation that his 2009 removal from his position at the U.S. Postal Service's Jefferson Station in Detroit, Michigan was an act of retaliation by Defendant, contrary to Defendant's explanation that he was removed from the job because he failed scheme training.[1] (*See* ECF No. 55, 4th Am. Compl. ¶¶ 60-71, 103C-103E.) In support of this aspect of his retaliation claim, Plaintiff has asserted that other employees that were otherwise similarly situated to him failed training programs in a similar fashion, but were not subjected to removal in the way that he was. (*See id.* ¶ 103C; *see also* ECF No. 77, Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. at 19, Pg ID 2284.)

On March 2, 2015, in the course of discovery, Defendant responded to a series of interrogatories and document requests propounded by Plaintiff. (ECF No. 103 Ex. 105.) Defendant's responses included the following:

> ***Interrogatory No. 12***: Please list the names of any and all career employees who failed either scheme or window training in the Detroit Installation from 01/01/08 to present.
> ***Response to Interrogatory No. 12***: Defendant objects to Interrogatory No. 12 because it is overly broad, unduly burdensome and not

---

[1] As noted in a previous Opinion and Order issued by this Court in this matter, each USPS station during the relevant time period had "a 'scheme'—a listing of addresses within a particular zip code—that clerks working in that station would have to learn in order to distribute mail to the correct letter carrier routes." (ECF No. 113 at 9 n.3, Pg ID 4693.)

2

> reasonably calculated to lead to the discovery of admissible evidence. Defendant does not have the ability to search for employees who failed scheme or window training generally without being provided an employee name. Subject to and without waiving objections, pursuant to Fed. R. Civ. P. 33(d), Defendant directs Plaintiff to those individuals identified in Defendant's response to Interrogatory No. 1 and Document Request No. 26 and documents Bates No. USPS 012126-012210.
>
> ***Document Request No. 27***: Please produce copies of any and all separation notice(s) for each and every employee who failed either scheme or window training in the Detroit Installation from 01/01/08 to present.
>
> ***Response to Document Request No. 27***: See Response to Interrogatory No. 12.

(*Id.* at Pg ID 4236-37.) Defendant notes in its Response that Plaintiff has not identified any USPS system that would in fact permit USPS to search for employees who failed scheme or window training without being provided with specific names. Defendant further notes that Plaintiff did not challenge Defendant's objections to Interrogatory No. 12 and Document Request No. 27, nor did he file a motion to compel discovery. (*See* Def.'s Resp. at 2-3, Pg ID 4638-39.)

Plaintiff represents that Defendant produced scheme training records for eight specific USPS employees, and (presumably sometime later) produced scheme training records and a notice of separation for USPS employee Melissa Sanders, whom Plaintiff states he never identified in any of his EEO claims. (*See* Pl.'s Mot. at 3, Pg ID 4363.) Plaintiff also points out that Defendant has filed three declarations at different points in this proceeding by USPS employees who claimed to have

3

reviewed USPS records (ECF No. 81 Ex. 34, Declaration of Nicole Collins-Earley; Ex. 36, Declaration of Michael Greene; ECF No. 88 Ex. 1, Declaration of Stacey O. Parker), and notes that none of these declarants "made any mention of missing records." (Pl.'s Mot. at 4-5, Pg ID 4364-65.)

On July 6, 2017, Plaintiff and the American Postal Workers' Union ("**APWU**") submitted a records request to Defendant seeking scheme training records for five specified USPS employees, while pursuing a compensation claim unrelated to this matter. (Pl.'s Mot. Ex. I, July 6, 2017 Information Request and USPS Response.) Plaintiff asserts that while Defendant eventually produced records for four of the five named individuals, Defendant never produced records for one of them: Jacqueline Green. (*See* Pl.'s Mot. at 7-9, Pg ID 4367-69.) Plaintiff further asserts that he independently learned from Green "that she was a clerk assigned to the Jefferson Station in January 2011 and that she failed scheme training for the position," as well as other facts about Green that Plaintiff argues demonstrate that she was similarly situated to him. (*Id.* at 9, Pg ID 4369.)

On November 9, 2017, Plaintiff filed an EEO complaint against Defendant for spoliation of scheme training records. (Pl.'s Mot. Ex. R, EEO Formal Complaint No. 4J-481-0190-17.) The EEO complaint was dismissed on November 22, 2017 by EEO Services Analyst Gil Grim, whose decision stated in pertinent part:

> The Commission has long held that an employee cannot use the EEO complaint process to lodge a collateral attack on another forum's

4

> proceeding. The proper forum for Complainant to have raised his challenges . . . was within the civil court process itself. It is inappropriate to now attempt to use the EEO process to collaterally attack actions which occurred through the court process.
>
> In the instant complaint, you allege that you became aware that management withheld or destroyed records pertinent to your prior EEO cases. However, the record contains documents concerning the filing of a civil action concerning training issues in 2009. Number 06-CV-15182, in the United States District Court, Eastern District of Michigan. The proper forum for you to raise challenges to actions which occurred in the civil court is through that forum itself. It is inappropriate to attempt to use the EEO process to collaterally attack actions which occurred during the above process.

(Pl.'s Mot. Ex. A, Dismissal of EEO Formal Complaint No. 4J-481-0190-17 at 3, Pg ID 4390.)

Along with the dismissal of the EEO complaint, Plaintiff has submitted a document apparently generated in the pre-complaint counseling phase, entitled "EEO Alternative Dispute Resolution Specialist's (ADRS) Inquiry Report," and dated November 15, 2017. (*Id.* at Pg ID 4392-94.) The section of that document entitled "Dispute Resolution Specialist's Inquiry" states as follows:

> Counselee is alleging discrimination on the basis of retaliation when on August 29, 2017, he became aware that records of others who failed scheme training were withheld and/or destroyed which he considers spoliation of evidence relative to his existing EEO complaints.
>
> An inquiry was requested and Gail Lewis, Manager of PEDC stated that Counselee was requesting records dating back to 2011. She was not the Manager and the records could not be located.

(*Id.* at Pg ID 4394.)

Plaintiff contends that he filed the instant Motion because "the USPS's spoliation of Jacqueline Green's scheme training records warrants entry of a default as to liability as to [Plaintiff]'s claims regarding scheme training and termination."[2] (Pl.'s Mot. at 10, Pg ID 4370.)

## II. LEGAL STANDARDS

"When a party destroys evidence in anticipation of litigation, the trial court may impose sanctions for spoliation." *Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016) (citing *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (en banc)). "It is within a district court's inherent power to exercise broad discretion in imposing sanctions based on spoliated evidence." *Carlson v. Fewins*, 801 F.3d 668, 678 (6th Cir. 2015) (quotation marks omitted) (quoting *Adkins*, 554 F.3d at 653).

A litigant seeking spoliation sanctions must make three showings:

(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a

---

[2] Plaintiff's Motion also discusses the other four individuals for whom Plaintiff and APWU sought records in 2017 at considerable length, detailing Plaintiff's argument that Defendant deliberately concealed records concerning USPS employee Shirley Johnson before eventually turning them over, as well as Plaintiff's arguments that each of the other four individuals were comparators similarly situated to Plaintiff. But because the only records that Plaintiff claims he did not receive in the present motion for spoliation sanctions were records concerning Jacqueline Green, and since Plaintiff makes clear that Green's scheme training records are the subject of the Motion, the Court disregards Plaintiff's arguments concerning the other four individuals outside the scope of the Motion.

reasonable trier of fact could find that it would support that claim or defense.

*Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014) (quotation marks omitted) (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)).

A district court has the discretion to "impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 513 (6th Cir. 2014) (quotation marks omitted) (quoting *Adkins*, 554 F.3d at 653). "The severity of sanction issued is determined on a case-by-case basis, depending in part on the spoliating party's level of culpability." *Yoder*, 774 F.3d at 1070 (citing *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013)).

### III.    DISCUSSION

The Sixth Circuit has made clear that the three-prong test for spoliation sanctions quoted above is "conjunctive," and that "as long as the district court correctly conclude[s] that the moving party did not satisfy at least one of the test's prongs, its determination that a spoliation sanction should not issue cannot be upset." *Yoder*, 774 F.3d at 1070 n.2 (citing *Adkins v. Wolever*, 692 F.3d 499, 504 (6th Cir. 2012)). Here, it is readily apparent that Plaintiff has failed to satisfy both the first

7

and the second prong of the test, and this Court therefore has no need to reach the third prong. Apart from that, Plaintiff has not shown that he is entitled to sanctions under Federal Rule of Civil Procedure 37.

A.  **Sanctions are not warranted under the Court's inherent power.**

In the instant Motion, Plaintiff argues that he has satisfied all three prongs of the standard governing spoliation sanctions under the Court's inherent power: an obligation by the party in control of the evidence to preserve it, a culpable state of mind, and materiality of the destroyed evidence to a claim or defense in the action. *See Yoder*, 774 F.3d at 1070. The Court rejects Plaintiff's argument for the reasons that follow.

1. **Obligation to preserve the records**

The "obligation" prong of the standard may be met "where a [litigant] knows evidence might be relevant to future potential litigation." *Ross v. Am. Red Cross*, 567 F. App'x 296, 303 (6th Cir. 2014) (quotation marks omitted) (quoting *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, 502 F. App'x 523, 532 (6th Cir. 2012)). The question is not whether the litigant had a generalized obligation to preserve the document at issue, but whether the litigant "knew or should have known that the document was relevant to future litigation." *Id.* at 302-03 (citing *Beaven*, 622 F.3d at 553); see also *id.* (concluding that the obligation prong was not met where there was no evidence of the party's awareness of potential litigation,

8

regardless of whether it was obligated to preserve the document by a consent decree).

As noted *supra*, Defendant stated in its March 2015 discovery response that it was unable to conduct a general search for records of employees who failed scheme or window training without specific names. Plaintiff argues that this statement was demonstrably false because Defendant later produced the scheme training records of Melissa Sanders (an employee whom Plaintiff had never identified), but this fact does not establish that Defendant misrepresented its inability to compile records of all employees who had failed scheme or window training without the names of specific employees. As Defendant points out, Plaintiff has offered no evidence tending to show that Defendant did in fact have this capability, and Plaintiff did not move to compel discovery or otherwise challenge Defendant's objection at the time that the request was unduly burdensome. Plaintiff counters in his Reply that the discovery responses were not made under oath, and therefore do not constitute competent evidence of Defendant's inability to compile the requested records (or at least its ability to compile the requested records without undue burden), but this argument misunderstands the way that the burdens are allocated at this time: as Plaintiff has moved for spoliation sanctions, he must make a showing that Defendant's discovery response was false or inaccurate. He has failed to do this.

The discovery requests at issue here called for two things: (1) "the names of any and all career employees who failed either scheme or window training in the

Detroit Installation from 01/01/08 to present," and (2) "any and all separation notice(s) for each and every employee who failed either scheme or window training in the Detroit Installation from 01/01/08 to present." (ECF No. 103 Ex. 105 at Pg ID 4236-37.)

Plaintiff has acknowledged that Jacqueline Green "was not issued a removal notice" (Pl.'s Mot. at 9, Pg ID 4369), and Green herself attested to this point in a declaration that Plaintiff has attached to his Reply (Pl.'s Reply Ex. A, Declaration of Jacqueline Green ¶ 7). The issue then becomes whether, lacking the ability to compile records of all employees who failed scheme or window training, Defendant knew or should have known that Jacqueline Green's records were relevant to future litigation. Plaintiff argues that "[a]ll records pertaining to this case, both in this Court and in the underlying EEO proceedings, were subject to litigation holds" (*id.*), and has submitted the litigation holds as an exhibit to his Motion. (Pl.'s Mot. Ex. D, Litigation Holds.) But the litigation holds merely identify the EEO complaints which Plaintiff had filed and broadly summarize their allegations, and while this evidence demonstrates that Defendant was on notice to preserve records generally relevant to those proceedings, Plaintiff has offered no reason to conclude that Defendant knew or should have known that *Jacqueline Green's records* were relevant to those proceedings. This is all the more apparent in light of Defendant's contentions that: (1) Plaintiff never identified Green as a potential comparator; and (2) Defendant had

no reason to believe that Green, who failed scheme training two years after Plaintiff did, when Defendant's staffing needs (and thus the factors influencing its decision whether to retain an individual who had failed scheme training) were entirely different. (Def.'s Resp. 7, Pg ID 4643.)

For these reasons, Plaintiff has failed to demonstrate that Defendant had an obligation to preserve Green's scheme training records.

### 2. Culpable state of mind

Plaintiff must also show "that the records were destroyed with a culpable state of mind." *Yoder*, 774 F.3d at 1070. "The requisite 'culpable state of mind' may be established through a 'showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it,' but even negligent conduct may suffice to warrant spoliation sanctions under the appropriate circumstances." *Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013) (quoting *Beaven*, 622 F.3d at 554).

It is not clear to begin with that Jacqueline Green's scheme training records were in fact destroyed.[3] Even on the assumption that they were, however, Plaintiff

---

[3] Plaintiff asserts only that Defendant never turned over Green's scheme training records to him, and submits a report from an EEO Dispute Resolution Specialist stating: "Gail Lewis, Manager of PEDC stated that Counselee was requesting records dating back to 2011. She was not the Manager and the records could not be located." (Pl.'s Mot. Ex. A, Dismissal of EEO Formal Complaint No. 4J-481-0190-17 at Pg ID 4394.) Defendant "USPS does not deny . . . that it had control of Green's training records" (Def.'s Resp. at 7, Pg ID 4643), but does not offer any indication of what happened to them.

has made no showing of a culpable state of mind on Defendant's part. Plaintiff maintains that Defendant's "repeatedly false statements evince[] a culpable state of mind in the loss or destruction (or intentional concealment) of Jacqueline Green's scheme training records." (Pl.'s Mot. at 13, Pg ID 4373.) Both varieties of "false statements" that Plaintiff has shown, however, are irrelevant to the question of culpability in connection with Green's scheme training records.

Plaintiff first argues that none of the three USPS employees who attested to having reviewed "regularly kept business records" in sworn declarations filed earlier in this matter made any mention of missing records. (ECF No. 81 Ex. 34, Declaration of Nicole Collins-Earley; Ex. 36, Declaration of Michael Greene; ECF No. 88 Ex. 1, Declaration of Stacey O. Parker) Each of these declarations concerned one or more specific USPS employees—none of whom were Jacqueline Green—and in context it is clear that each declarant's reference to having reviewed regularly kept business records is intended to establish the declarant's competency to make the statements in his or her declaration. None of these declarants would have had any reason to mention Jacqueline Green's records. This argument is patently without merit.

Plaintiff also argues that Defendant falsely stated that it did not possess scheme training records for USPS employee Shirley Johnson, and then (one day later) furnished him with those records. (Pl.'s Mot. Ex. J, Emails of July 5-6, 2017.) Plaintiff argues that he only received Johnson's records after Defendant was

12

threatened with sanctions under a Sixth Circuit Consent Order, which provides for "fines of $17,500 for each failure or delay in providing information to the APWU and its representatives, with further fines of $300 per day for continuing violations." (Pl.'s Mot. at 7, Pg ID 4367; Pl.'s Mot. Ex. M, Consent Order.) The notion that this could somehow satisfy the culpability prong of the spoliation-sanction inquiry is unconvincing for several reasons. First, Plaintiff's evidence fails to establish or even suggest that Defendant capitulated to his records request because of a threat of sanctions. Second, even if it did, Plaintiff has not explained why these circumstances, which concern Johnson's records, would pertain to Defendant's state of mind as to Green's records. Third, even if the evidence showed a misrepresentation by Defendant as to Johnson's records, *and* even if Plaintiff had made some colorable argument that this was relevant to Green's records, Plaintiff's theory is illogical on its face: if indeed Defendant withheld records in order to undermine Plaintiff's claims but then immediately turned them over on pain of sanctions, it beggars belief that Defendant would turn over some of the requested records but retain others in order to undermine Plaintiff's ongoing litigation—and not, for example, because the records had been inadvertently misplaced.

Plaintiff has failed to demonstrate that Defendant had an obligation to preserve Jacqueline Green's scheme training records, and that those records were destroyed with a culpable state of mind. These failures are fatal to Plaintiff's request

13

for spoliation sanctions under this Court's inherent authority. Further, the Court concludes that Green's records are not relevant to Plaintiff's claim because it is clear that he and Green were clearly not similarly situated. Green failed scheme training in 2011—two years *after* he did.

Further, the instant Motion is not timely. Plaintiff asserts that he learned from Green that she failed scheme training in August 2017, yet Plaintiff waited 7 months to file this Motion, all the while aware that a motion for summary judgment (ECF No. 68) was pending. Thus, Plaintiff failed to bring his spoliation motion as soon as reasonably possible.

In *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494 (D. Md. 2009), Judge Paul Grimm noted that "there is a particular need for these [spoliation] motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Id.* at 508. *See also Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 995-97 (N.D. Ohio 2016).

**B.   Sanctions are not warranted under Rule 37(c)(1).**

Plaintiff also argues that he is entitled to sanctions under Federal Rule of Procedure 37(c)(1), which provides in relevant part:

> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>    (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure

was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>   (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>   (B) may inform the jury of the party's failure; and
>   (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1).

As the text of the Rule makes clear, Rule 37(c)(1) governs sanctions for violations of Federal Rule of Civil Procedure 26(a) or (e). Rule 26(a) governs initial disclosures, expert testimony disclosures, and pretrial disclosures, none of which are clearly implicated here. Plaintiff's argument appears to be that Defendant violated Rule 26(e)(1) ("Supplementing Disclosures and Responses"), which provides:

> (1) In General. A party who has made a disclosure under Rule 26(a)-- or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>   (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>   (B) as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

There is no court order at issue here, and so Defendant can only be said to have violated Rule 26(e)(1) if it failed to "supplement or correct" its discovery

15

responses in a timely manner upon "learn[ing] that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Plaintiff alleges that Defendant has continued to withhold (or that it destroyed) only Jacqueline Green's records, and not the records of any other individual he has specified, and so only Green's records could implicate Rule 26(e)(1)(A).

They do not, however, because Plaintiff has not identified any discovery response that Defendant had a duty to supplement with Green's records. The discovery requests identified above required disclosure of the names of Detroit Installation employees who failed scheme or window training from January 2008 to 2015, and the separation notices for such employees. (ECF No. 103 Ex. 105 at Pg ID 4236-37.) Plaintiff and Green herself both admit that Green did not receive a removal notice (Pl.'s Mot. at 9, Pg ID 4369; Green Decl. ¶ 7), which leaves only Green's name as a potential basis for a finding that Defendant failed to supplement its discovery responses. There is no evidence that Defendant knew about Green any earlier than Plaintiff did. The Court rejects Plaintiff's argument that he is entitled to sanctions under Rule 37(c).

## IV. CONCLUSION

For all of the reasons stated above, the Court hereby DENIES Plaintiff's Motion for Default Judgment as to Liability as to Retaliation Claims Involving Scheme Training and Termination Due to Spoliation of Evidence. (ECF No. 109.)

IT IS SO ORDERED.

Dated: April 20, 2018

s/Paul D. Borman
Paul D. Borman
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 20, 2018.

s/D. Tofil
Deborah Tofil, Case Manager